Nina Mae SAPP, a/k/a Nina Mae Cunningham, Plaintiff,

v.

Robert CUNNINGHAM; Paul Brooks; Wyoming Department of Family Services; Bill Brown, in his official capacity for the Department of Family Services; Dahlia Romo, in her official capacity for the Department of Family Services; Richard Robb, individually and in his official capacity for the Department of Family Services; Patricia Clarke, individually and in her official capacity for the Department of Family Services, Defendants.

No. 93–CV–0222–B.

United States District Court, D. Wyoming.

March 23, 1994.

James A. Eddington, Torrington, WY, Donald J. Sullivan (Oral argument), Cheyenne, WY, for plaintiff.

Robert Cunningham, pro se.

Daniel G. Blythe, Cheyenne, WY, for Paul Brooks.

Elizabeth Zerga, Cheyenne, WY, for all other defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon the Defendants' Motions for Summary Judgment, and the Plaintiff's Opposition thereto, and the Court, having reviewed the materials on file herein both in support of and in opposition to, having heard

oral argument, and being fully advised in the premises, hereby FINDS and ORDERS as follows:

### Background

This case involves serious questions about the responsibility of state officials in addressing the problems of child abuse. Plaintiff Nina Mae Sapp claims that she was repeatedly abused, both physically and sexually, by her legal guardians. She further alleges that employees of the Wyoming Department of Family Services ("WDFS") knew about these claims of abuse but failed to intervene on her behalf. The narrow question before this Court is whether these allegations against the WDFS employees, and the WDFS itself, state a claim for relief under 42 U.S.C. § 1983 (1988) based on a deprivation of the plaintiff's substantive due process rights. For reasons set forth below, the Court is compelled to conclude that there is no *constitutional*[1] claim presented by the facts of this case.

The state actor defendants, who filed the pending motions for summary judgment, are various WDFS employees who have been sued in their individual and official capacities. The remaining non-state actor defendants are Robert Cunningham, who is the husband of the now deceased Grace Cunningham, the plaintiff's legal guardian, and Paul Brooks, the plaintiff's step-brother. Sometime in August of 1973, the plaintiff, who was then three years old, was given by her mother and through her aunt to Mrs. Cunningham who, on July 16, 1975, became the plaintiff's legal guardian. The Cunninghams are not biologically related to the plaintiff; they are her legal guardians.

■ Without reciting the facts in this case with a great deal of specificity, it is sufficient to note that the plaintiff alleges that she was repeatedly abused, both physically and sexually, by her guardians as well as Brooks. She further alleges that WDFS learned of several of these incidents, but that they simply failed to take any affirmative corrective action to remove her from this household. She subsequently initiated this suit against the above-named defendants claiming that WDFS and its employees deprived her of her "liberty" under the due process clause of the Fourteenth Amendment by failing to remove her from a household when they allegedly knew that she was being abused. She asserted her § 1983 claims against employees of the WDFS as well as WDFS itself by naming several of its employees in their official capacities.[2] In addition, she brought state law tort claims

---

1. The Court intimates no opinion as to the merits of any state law tort claims that the plaintiff has asserted against any of these defendants.

2. In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court succinctly summarized the difference between an individual, or personal, capacity suit and an official-capacity suit. The Court stated that:
 [p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law ... [o]fficial-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.... an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.
 See *id.* at 165–66, 105 S.Ct. at 3105; *see also Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). Thus, an individual-capacity suit under § 1983 simply requires proof of a deprivation of a federally protected right by an individual acting under color of state law. See *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105 (discussing § 1983).

An official-capacity suit, however, is one where "the real party in interest ... is the governmental entity and not the named official ..." *Hafer v. Melo*, —— U.S. ——, ——, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). In order to prevail in an official-capacity suit, the plaintiff must prove the two elements necessary in an individual capacity suit *and* a third element. That additional burden requires the plaintiff to prove that the governmental entity itself was the "moving force" behind the deprivation such that it would be proper to impose liability on the municipality itself. See *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell v. New York City Dep't of Social Svces.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. ——, ——–——, 113 S.Ct. 1160, 1162–63, 122 L.Ed.2d 517 (1993) (stating that a municipality cannot be held liable under § 1983 "unless a municipal policy or custom caused the constitutional injury.").

against these defendants as well as against Cunningham and Brooks.[3]

This Court has jurisdiction over the state law claims against the WDFS defendants pursuant to so-called "pendent" jurisdiction, codified at 28 U.S.C. § 1367(a) (West Supp. 1993). The Court's jurisdiction over the state law claims against Cunningham and Brooks exists by virtue of so-called "pendent party" jurisdiction, presently codified at 28 U.S.C. § 1367(a) (West Supp.1993).[4]

The WDFS defendants subsequently filed the pending motions for summary judgment in both their individual and official capacities. The individual capacity motion asserts that summary judgment is warranted on the § 1983 claims for two reasons: (1) *DeShaney v. Winnebago Cty. Dep't of Soc. Svces,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), holds that there is no cause of action for an alleged liberty deprivation under these circumstances; and (2) the WDFS employees are entitled to qualified immunity. The defendants sued in their individual capacities have also moved for summary judgment as to any state law tort claims against them, alleging various state law defenses. The official capacity motion also asserts two bases in support of summary judgment: (1) *DeShaney;* and (2) that the WDFS is an arm of the state and as such is not a "person" under § 1983.

### Standard of Review

The standard for summary judgment is well-established and need not be recited in great detail here. *See Central Wyoming Law Assoc's, P.C. v. Denhardt,* 836 F.Supp. 793, 798 (D.Wyo.1993) (Brimmer, J.); *White v. Continental General Ins. Co.,* 831 F.Supp. 1545, 1551–52 (D.Wyo.1993) (Brimmer, J.).

"By its very terms, [the Rule 56(c) ] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510; *see also Carey v. United States Postal Serv.,* 812 F.2d 621, 623 (10th Cir.1987). Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Carey,* 812 F.2d at 623. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Carey,* 812 F.2d at 623. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

### Discussion

A. *Individual Capacity Motion for Summary Judgment*

As noted, the defendants have also moved for summary judgment in their individual

---

**3.** At the hearing on the WDFS motions for summary judgment, the Court also addressed the motions to dismiss and for a separate trial of defendant Brooks. A separate order was entered denying Brooks' motion to dismiss and granting his motion to sever. Because of the severance, however, this Court no longer possessed jurisdiction over the claims against Brooks and his case was thereby remanded to state court for further proceedings.

**4.** That statute expressly permits a district court to exercise what had formerly been known as

"pendent party" jurisdiction. Subsection (a) of the statute provides that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

It is clear that the inclusion of this sentence was intended by Congress to overrule the Supreme Court's decisions in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) and *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), which rejected the doctrine of "pendent party" jurisdiction.

capacities, relying on *DeShaney* and the doctrine of qualified immunity. The Court addresses these claims in turn.

### 1. DeShaney *and its Relevance to this Case*

■ The defendant's first argument is that the Supreme Court's decision in *DeShaney* is dispositive here and entitles the defendants to summary judgment in both their individual and official capacities.

*DeShaney* involved a factual situation that is similar in all relevant respects to the facts of this case with one exception, discussed below. In that case, the Winnebago County Department of Social Services received complaints that a father was severely beating his child. The social workers, however, failed to remove the child from the household, and as a result of this continued physical abuse, the child, Joshua DeShaney, suffered permanent brain damage.

The issue before the Supreme Court was whether the Department of Social Services' failure to take affirmative action to protect the child from "private violence, or other mishaps not attributable to the conduct of [the state's] employees" stated a cause of action for a deprivation of liberty under the substantive component of the due process clause of the Fourteenth Amendment. *De-Shaney*, 489 U.S. at 193–94, 109 S.Ct. at 1001–02 (citation omitted). The Supreme Court, per Chief Justice Rehnquist, held that where the state does not create the danger that resulted in harm to the child, but simply fails to intervene in the status quo, the plaintiff has failed to state a constitutional claim. *Id.* at 197, 109 S.Ct. at 1004.

The Chief Justice wrote:

nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," *but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.*

*Id.* at 195, 109 S.Ct. at 1003 (emphasis added). The Court rejected petitioner's argument that the state acquired an affirmative duty to protect the child from danger based on the fact that it allegedly had actual knowledge of the abusive behavior. The Court acknowledged that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198, 109 S.Ct. at 1004. The "limited circumstances," identified by prior precedents such as *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)[5] and *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982),[6] involved situations where the state "[took] a person into its *custody* and [held] him there against his will[.]" *DeShaney,* 489 U.S. at 199–200, 109 S.Ct. at 1005. In those narrow circumstances, "the Constitution imposes upon [the state] a corresponding duty to assume some responsibility for [the individual's] safety and general well-being." *Id.* at 199–200, 109 S.Ct. at 1005 (citation omitted) (emphasis added). The Court reasoned that the state's affirmative act of restraining the individual's freedom to act on his own, coupled with the failure to provide adequate care, amounted to a deprivation of the individual's liberty without due process of law.[7]

---

5. In *Estelle,* the Supreme Court held that prison officials have an affirmative duty to provide medical care to prisoners such that if the officials' failure to provide such care was based on "deliberate indifference to the serious medical needs" of the inmates, there could be a claim based on the cruel and unusual punishment clause of the Eighth Amendment. *See Estelle,* 429 U.S. at 103–04, 97 S.Ct. at 291.

6. In *Youngberg,* the Court held that the substantive component of the due process clause placed an affirmative duty on the state to provide involuntarily committed mental patients with such services as were necessary in order to insure the "reasonable safety" of the patients and others. *See Youngberg,* 457 U.S. at 314–25, 102 S.Ct. at 2457–63.

7. Interestingly, the Court expressly acknowledged, without deciding, that if the state had exercised its power and placed the plaintiff into a foster home, that might constitute a custodial-type situation that could give rise to an affirma-

Counsel for the plaintiff, who represented Joshua DeShaney before the United States Supreme Court, urges an interesting distinction between the facts of this case and *DeShaney* in support of his argument that *DeShaney* is not dispositive here. Counsel argues that *DeShaney* involved child abuse by a natural parent whereas this case involved a legal guardian who was essentially a complete stranger to the plaintiff. Counsel correctly notes that parents have a constitutionally recognized right to raise their children as they see fit, *see, e.g., Pierce v. Society of Sisters*, 268 U.S. 510, 518, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), free of state interference absent some compelling justification, *see Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944), and that a legal guardian does not possess the same rights as a parent in deciding how to raise one's children. As a result, his argument concludes that *DeShaney* is distinguishable. Counsel also candidly concedes that if the Court concludes that *DeShaney* is indistinguishable from the case at bar, then the defendants are in fact entitled to summary judgment.

After careful consideration of this issue, the Court concludes that while the parent-guardian distinction might have some merit, it would not, under this Court's reading of *DeShaney*, change the outcome. The reason for this conclusion is that the gravamen of *DeShaney* is the notion that the state has no affirmative duty, in the non-custodial context, "to protect an individual against *private* violence[.]" *Id.* 489 U.S. at 197, 109 S.Ct. at 1004 (emphasis added); *see also Hilliard v. City and County of Denver*, 930 F.2d 1516, 1520 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991) (characterizing *DeShaney* as standing for the proposition that there is "no constitutional duty on the apart of state or local

governments to rescue their citizens from invasion by *private actors*.") (emphasis added). *DeShaney* is grounded in the fact that where the state itself has not created the danger to the plaintiff, there can be no constitutional violation where the state fails to intervene and stop private violence. *See Medina v. City and County of Denver*, 960 F.2d 1493, 1497 n. 5 (10th Cir.1992) (discussing *DeShaney* ). As the Chief Justice stated, the due process clause is phrased as a "limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195, 109 S.Ct. at 1003. Thus, even if this Court were to accept a distinction between a natural parent and a legal guardian, the Court is of the opinion that the legal conclusion would nonetheless be the same under the existing state of the law. In both cases, the alleged abuser, whether parent or guardian, is still a private actor that is not subject to constitutional constraints.[8]

In conclusion, this Court is sympathetic to the plight of individuals like Joshua DeShaney and Nina Mae Sapp, and obviously, the Court's conclusion interpreting the law is not meant as approving or condoning the terrible tragedies that have befallen these innocent individuals, nor is it intended to assess blame. The narrow question of law before this Court is whether these claims state a cause of action for a *constitutional violation* under the due process clause and the Supreme Court's existing precedent. This Court's conclusion that these claims do not state a constitutional violation is further reinforced by the Supreme Court's continuous reluctance to interpret the due process clause as creating "a body of general federal tort law" or establishing "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *see also DeShaney*, 489 U.S. at 201–02, 109 S.Ct. at

---

tive duty on the part of the state to protect the child. *See DeShaney*, 489 U.S. at 201 n. 9, 109 S.Ct. at 1006 n. 9 (citing cases).

The present case, however, does not present this situation either, and this Court intimates no opinion on the merits of such a claim.

8. It may be that the plaintiff is attempting to argue that because a legal guardian is *appointed* by the state, the guardian is now considered a state actor such that *DeShaney* can be distinguished as this case would allegedly not involve purely private abuse. If this is in fact counsel's argument, he has not cited, nor has this Court found, any cases to support this position.

1006 (stating that the due process clause "does not transform every tort committed by a state actor into a constitutional violation.") (citations omitted). It is clear that while the plaintiff may attempt to redress her claims based on the statutory and common law of the State of Wyoming, her claims do not rise to the level of a constitutional violation under presently existing law. As a result, the defendants' motion for summary judgment must be granted.

### 2. *Qualified Immunity*

In the alternative, however, the Court notes that even if *DeShaney* was not dispositive in this case, it is clear that the defendants would still be entitled to summary judgment based on their claim that they are qualifiedly immune.

#### a. *The Doctrine*

■■■■ The doctrine of qualified immunity vests government officials with immunity from suit as well as from liability, *see Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985); *see also Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 644 (10th Cir.1988), for their discretionary acts. *See Antoine v. Byers & Anderson, Inc.*, —— U.S. ——, ———— ——, 113 S.Ct. 2167, 2171–72, 124 L.Ed.2d 391 (1993). The classic formulation of the doctrine provides:

> [g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), *quoted in Rozek v. Topolnicki*, 865 F.2d 1154, 1157 (10th Cir.1989). A claim of qualified immunity presents a pure question of law; a district court "cannot avoid the question by framing it as a factual issue." *Losavio*, 847 F.2d at 646, *quoted in Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir.1991). While this defense must be asserted by the defendant as an affirmative defense, *see Harlow*, 457

U.S. at 815, 102 S.Ct. at 2736; *see also Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980), the plaintiff's complaint cannot be subjected to any type of "heightened pleading requirement" so as to defeat the defendant's anticipated claim of qualified immunity. *See Leatherman*, 507 U.S. at —— ——, 113 S.Ct. at 1162–63.[9] The doctrine of qualified immunity serves the goals of "protecting officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978); *Buckley v. Fitzsimmons*, 509 U.S. ——, ——, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993); *see also Sawyer*, 908 F.2d at 665–66.

#### b. *Was the Law "Clearly Established"?*

■■■■ The determination of whether the actions, or in this case inactions, of the defendants violated any "clearly established statutory or constitutional rights" is a pure question of law which must be decided by more than simple reference to "generalized legal principles." *Medina*, 960 F.2d at 1497. In order for a right to be "clearly established" under *Harlow* and its progeny, the plaintiff bears the burden, *see Lutz v. Weld County Sch. Dist.*, 784 F.2d 340, 342–43 (10th Cir.1986), of establishing that the contours of the right were "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see also Dixon*, 922 F.2d at 1460.

■■■■ The critical aspect of this inquiry is into the developmental level of the law. As the Tenth Circuit stated, "in order for the law to be clearly established, there must be a Supreme Court decision on point, or Tenth Circuit decision on point, or the *clearly established weight* of authority from other courts must have found the law to be as the plaintiff maintains." *Medina*, 960 F.2d at 1498 (citing *Stewart v. Donges*, 915 F.2d 572, 582–83 & n. 14 (10th Cir.1990) (emphasis added)). "We consider the law to be 'clearly established'

---

9. *Leatherman* effectively overrules this aspect of *Sawyer v. County of Creek*, 908 F.2d 663, 665–67

(10th Cir.1990), where the Tenth Circuit endorsed a heightened pleading requirement.

when it is *well-developed enough* to inform [a] reasonable official that his conduct violates the law." *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir.1992) (emphasis added). Finally, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant[s'] actions were clearly prohibited." *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990).

### c. *Would a Reasonable Person Have Known?*

■ Finally, if there was a clearly established right, then the question is whether a reasonable person in the defendants' position would have understood that his or her conduct violated this clearly established right under the facts and circumstances known *at that time. See Anderson*, 483 U.S. at 639–42, 107 S.Ct. at 3038–40 (emphasis added); *see also Sawyer*, 908 F.2d at 666; *Hilliard*, 930 F.2d at 1521 (emphasizing that the contours must have been well-delineated at the time of the conduct).

■ The burden rests on the plaintiff to produce sufficient evidence to demonstrate that the defendant is not entitled to qualified immunity. *See Lewis v. City of Fort Collins*, 903 F.2d 752, 758 (10th Cir.1990). If the Court, after accepting the plaintiff's version of the facts, is nonetheless of the conclusion that a reasonable officer in the defendants' position would have believed that his conduct was lawful, then there are no "genuine issues of material fact" under Rule 56(c) and the Court may enter summary judgment for the defendant on his or her qualified immunity defense "as a matter of law." *See* FED. R.CIV.P. 56(c).

### d. *Application in this Case*

■ Based on the foregoing, it is apparent that the individual capacity defendants would be entitled to summary judgment on the basis of qualified immunity. The critical issue before this Court with respect to qualified immunity is whether it can be said that the defendants' alleged failures to act violated some clearly established law in existence at that time. For reasons set forth below, it cannot be said that the law regarding consti-

tutional liability for failure to act in this context was even established, and *a fortiori,* it certainly cannot be said to have been *clearly* established.

The relevant inquiry can be framed as follows: was it clearly established between 1979 and 1984 within a sufficiently analogous factual setting that the particular inactions of these officials was grounds for a § 1983 claim. *Cf. Medina*, 960 F.2d at 1497. In this regard, the Court finds both *DeShaney,* a 1989 decision, and the Tenth Circuit's 1991 decision in *Hilliard* instructive. In *DeShaney*, the Supreme Court expressly stated, albeit in dicta, that certiorari was granted:

> [b]ecause of the inconsistent approaches taken by the lower courts in determining when, if ever, the failure of a state or local governmental entity or its agents to provide an individual with adequate protective services constitutes a violation of the individual's due process rights . . .

*DeShaney,* 489 U.S. at 194, 109 S.Ct. at 1002. Moreover, the abuse involved in *DeShaney* occurred during approximately the same time frame as the alleged abuse in this case, from the late 1970's through the early-middle part of the 1980's.

In *Hilliard,* the Tenth Circuit cited *DeShaney* for guidance as to the question of whether the law regarding the state's obligation to provide personal security to an individual in a noncustodial setting was "clearly established." The Tenth Circuit cited the paragraph cited above from *DeShaney* and concluded:

> [t]his explicit acknowledgement by the Supreme Court regarding the state of the law governing any affirmative governmental duty to provide citizens with protection further convinced us that *the law at issue was not clearly established at the time of the defendants' actions.*

*Hilliard,* 930 F.2d at 1520–21 (emphasis added).

This conclusion is reinforced by the fact that the Supreme Court has not addressed this issue prior to 1989 nor had the Tenth Circuit. Moreover, it cannot be said that the overwhelming weight of persuasive authority had "clearly established" the law under

§ 1983 regarding the state's alleged failure to act in the non-custodial context. As a result, it is apparent that the defendants' actions cannot be said to have violated any "clearly established" rights of the plaintiff, and summary judgment is therefore appropriate on this basis as well.

### B. *Official Capacity Motion for Summary Judgment*

 The official capacity defendants have moved for summary judgment on the basis of *DeShaney* as well as on the grounds that the state is not a "person" within the meaning of § 1983.[10] As noted above, *DeShaney* disposes of this claim on the merits; however, the Court concludes that the official capacity defendants would also be entitled to summary judgment for the separate reason that the state is not a "person" under § 1983 and thus cannot be sued.

In the seminal decision in *Monell*, the Supreme Court held that a municipality was a "person" within the meaning of § 1983. *See Monell*, 436 U.S. at 692–94, 98 S.Ct. at 2036–37. The holding of *Monell*, however, was limited "to local government units which are not considered part of the State for Eleventh Amendment purposes[.]" *Id.* at 690 n. 54, 98 S.Ct. at 2035 n. 54. In *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court expressly considered the question presently before this Court, framing the issue as follows:

> [t]his case presents the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of [§ 1983].

The Court answered the question in the negative, concluding that there were significant differences between municipal and state governments such that the latter could not be considered a "person" for § 1983 purposes. The Court concluded that § 1983 could not be interpreted "to disregard the well-estab-

<hr>

10. It is well-settled that because an official capacity suit is a suit against an entity and not the named individual, the only defenses that are available are those that the entity possesses. As a result, the defense of qualified immunity is unavailable in an official capacity suit. *See Graham*, 473 U.S. at 167, 105 S.Ct. at 3106 (citing

lished immunity of a State from being sued without its consent [under the Eleventh Amendment]." *Will*, 491 U.S. at 67, 109 S.Ct. at 2310 (footnote omitted). Moreover, the Court's holding took into account the fact that a state official sued in his official capacity was "no different from a suit against the State itself." *Will*, 491 U.S. at 71, 109 S.Ct. at 2311 (quoting *Graham*, 473 U.S. at 165–66, 105 S.Ct. at 3104–05). In sum, the holding of *Will* was that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71, 109 S.Ct. at 2312.

*Will* is dispositive in the present case and compels summary judgment for the official capacity defendants. The plaintiff has not disputed that WDFS is in fact an arm of the State for Eleventh Amendment purposes. *See Mt. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977), *quoted in Will*, 491 U.S. at 70, 109 S.Ct. at 2311. Finding no meaningful distinction between *Will* and the case at bar, the Court is forced to conclude that official capacity defendants' motion for summary judgment must be granted.

### C. *State Law Claims*

 As noted above, this Court's jurisdiction over the plaintiff's state law tort claims was predicated on supplemental jurisdiction under § 1367(a), in the form of pendent and pendent party jurisdiction. Pursuant to § 1367(c)(3), once the federal claims which gave rise to this Court's original jurisdiction have been dismissed, this Court has discretion to dismiss the state law claims without prejudice to the plaintiff. *See, e.g., Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir.1992); *Hansen v. Lamontagne*, 808 F.Supp. 89, 95 (D.N.H.1992); *Simmerman v. Corino*, 804 F.Supp. 644, 658 (D.N.J.1992) (state law child abuse claims dismissed after dismissal of federal claims). The Court also

*Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)); *see also Leatherman*, 507 U.S. at ——, 113 S.Ct. at 1162 (stating that "municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983.").

notes that § 1367(d) tolls the statute of limitations for a minimum of thirty days within which the plaintiff may file suit in state court without confronting a statute of limitations problem.

**THEREFORE,** it is

**ORDERED** that Defendants' Motions for Summary Judgment in their Individual and Official Capacities be, and the same hereby are, **GRANTED.** It is further

**ORDERED** that the plaintiff's remaining state law claims be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE.**