**Brad BANGERTER, Plaintiff,**

v.

**OREM CITY CORPORATION, a Utah Municipal corporation, Defendant.**

No. 92–C–0224–S.

United States District Court, D. Utah, C.D.

Aug. 5, 1992.

Lisa A. Marcy, Legal Center for the Handicapped, Robert B. Denton, Paul Johnson, Salt Lake City, Utah, for plaintiff.

Jody K. Burnett, Williams & Hunt, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

SAM, District Judge.

This matter is before the Court on defendant Orem City Corporation's (Orem City) Motion to Dismiss. A hearing on the motion was held July 14, 1992. Jody Burnett, Esq. represented Orem City and Lisa A. Marcy, Esq., Robert B. Denton, Esq. and Paul Johnson, Esq. appeared on behalf of plaintiff Brad Bangerter.

*Facts*

Brad Bangerter is a mentally retarded man who was discharged from the Utah State Developmental Center (formerly Utah State Training School) on or about December 29, 1989 to live in a group home

located at 741 East 800 North, Orem, Utah. Three other mentally handicapped men shared the home with him. The home was operated by Chrysalis Enterprises (formerly "RLO"). At the time Mr. Bangerter entered the home, Chrysalis had not yet obtained a conditional use permit from Orem City to operate a group home, which permit is required by Utah Code Ann. § 10–9–2.5 (1953) and local zoning ordinance. When Mr. Orbin, who was operating the home, became aware of the conditional use permit requirement, he applied to Orem City to obtain such a permit. Issuance of the conditional use permit was discussed at City Council meetings on February 6 and 13, 1990 and at a Planning Commission meeting on March 7, 1990. Complaint, ¶ 23. The conditional use permit was granted on March 13, 1990. The conditions imposed on the group home required that:

> the operator of the facility provide assurances that the residents of the facility will be properly supervised on a 24–hour basis; and

> the operator of the facility establish a community advisory committee through which all complaints and concerns of neighbors may be addressed.

On March 15, 1991, Mr. Bangerter was transferred to another group home located in Provo. This action was filed on March 13, 1992—two years to the day after conditional use permit was granted and nearly one year after Mr. Bangerter moved from the home.

The Complaint alleges two causes of action. The first is titled "Conditional Use Permit" and alleges that the conditions imposed in connection with the permit violate the Fair Housing Amendments Act of 1988 to Title VIII of the Civil Rights Bill of 1968, specifically 42 U.S.C.A. § 3604 (West Supp.1992) [hereafter "Fair Housing Act"]. The second cause of action is titled "Public Hearings" and alleges that the three public hearings held in connection with the conditional use permit application: (1) violated the Fair Housing Act by discriminating against Mr. Bangerter; (2) subjected Mr. Bangerter to verbal threats and attacks;

and (3) were preempted by the Fair Housing Act. The first paragraph of the Complaint alleges violation of 42 U.S.C. § 1983 (1988) and indicates that Mr. Bangerter seeks injunctive relief along with other forms of relief. However, the Complaint contains no further reference to § 1983 and the prayer for relief does not include a request for an injunction.

Orem City has moved to dismiss this action alleging as follows:

(1) Mr. Bangerter lacks standing as he is attempting to invoke the rights of third parties not named as plaintiffs;

(2) Mr. Bangerter's claims are moot because he was permitted to live in the group home in question before, during and after the application process;

(3) No violation of § 1983—none specifically alleged in the Complaint;

(4) The Fair Housing Act does not preempt Utah Code Ann. § 10–9–2.5 or the Orem City Zoning Ordinance adopted pursuant to that statute;

(5) Application of state law and the local zoning ordinance did not discriminate against Mr. Bangerter because he was not denied the housing of his choice—no discriminatory effect;

(6) Orem City cannot be held vicariously liable for disparaging comments allegedly made by residents at the public hearings.

*Standing*

■ Orem City suggests Mr. Bangerter lacks standing because he is attempting to invoke the rights of third parties by filing this lawsuit, specifically those of Roy Orbin and Chrysalis. Essentially, Orem City states that a resident of the group home has no right to sue under the Fair Housing Act, but that only the owner of the group home may sue. The Fair Housing Act specifically prohibits discrimination against "a person residing in or intending to reside in [a] dwelling after it is sold, rented, or made available." 42 U.S.C.A. § 3604(f)(1)(B) (West Supp.1992). The legislative history of the Act bolsters Mr. Bangerter's claim of standing:

The Act is intended to prohibit the application of special restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community. *H.R.Rep. No. 711*, 100th Cong., 1st Sess. 24 *reprinted in* 1988 U.S.C.C.A.N. 2173, 2185.

The Court concludes that Mr. Bangerter is within the class which the Fair Housing Act aims to protect. However, in order to invoke the Court's jurisdiction, Mr. Bangerter must still allege "some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

In his First Cause of Action, Mr. Bangerter alleges the following harm: restriction in ability to live in the residence of his choice (¶ 32); interference with ability to enjoy an independent and normal living setting and invasion of privacy as a result of requiring twenty-four hour supervision (¶ 33); and discrimination against persons with mental retardation (¶ 34). Mr. Bangerter admits in his Complaint that Orem City never interfered with his ability to maintain residence in the home in question. However, Mr. Bangerter alleges that the imposition of the 24 hour supervision requirement interfered with his ability to live independently and with his right of privacy. The Court concludes that the latter allegation is sufficient to resist Orem City's motion to dismiss.

■ However, the Court concludes that Mr. Bangerter fails to allege a threatened harm or injury resulting from Orem City's requirement that "[t]he *operator* of the facility must establish a community advisory committee...." This requirement clearly imposes a condition only on the operator of the facility and does not appear to affect the residents. However, in an attempt to allege he has been harmed by this requirement, Mr. Bangerter characterizes the committee as a "neighborhood watch committee" and claims that his independence has been restricted and his privacy violated.[1] This Court fails to see how Mr. Bangerter can fairly allege to have been harmed by a requirement that the operator form a committee to address the concerns and complaints of neighbors. The Court, therefore, concludes that Mr. Bangerter does not have standing to challenge this particular requirement.

### Mootness

■ Orem City contends Mr. Bangerter's claims are moot because the conditional use permit was granted and because Mr. Bangerter moved out of the group home more than a year ago. However, Mr. Bangerter alleges that, regardless of the fact he was permitted to stay in the group home, he was harmed by the imposition of the conditions outlined in his Complaint. Therefore, the granting of the conditional use permit, which imposed the conditions of which Mr. Bangerter complains, does not moot his claims. The Court further concludes that the fact Mr. Bangerter may have left the facility in question does not render his claims moot. However, if Mr. Bangerter is requesting injunctive relief as he represents in the opening paragraph of his Complaint, then that request must be denied as moot because Mr. Bangerter no longer lives in the Orem group home.[2]

### Violation of 42 U.S.C. § 1983

As with the claim for injunctive relief, Mr. Bangerter makes no more than a passing reference in the opening paragraph of his Complaint to the alleged violation of 42 U.S.C. § 1983. He offers no factual support for that claim in the body of the Complaint. Orem City challenged the al-

---

1. A "neighborhood watch committee" is different from the grievance committee apparently contemplated by the statute. The grievance committee is set up as a sounding board to which "all complaints and concerns of neighbors may be addressed." Utah Code Ann. § 10–9–2.5(2)(c) (1953). On the other hand, a neighborhood watch committee is typically composed entirely of neighbors who set out to scrutinize and police a particular identified problem.

2. It is not clear from the Complaint whether Mr. Bangerter actually seeks injunctive relief because the prayer for relief does not include a request for an injunction.

leged § 1983 violation by the Motion to Dismiss and Mr. Bangerter did not respond to Orem City's arguments for dismissal of that particular claim. Moreover, at the hearing, counsel for Mr. Bangerter admitted that he was not alleging that any constitutional violations had taken place. On those bases the Court dismisses any claim based on 42 U.S.C. § 1983.

*Preemption*

■ Orem City also seeks dismissal of the first cause of action on the basis that the statute and city ordinance challenged by Mr. Bangerter are not preempted by the Fair Housing Act. The Eighth Circuit considered this question in *Familystyle of St. Paul, Inc. v. City of St. Paul Minn.*, 923 F.2d 91 (8th Cir.1991). Familystyle was a Minnesota organization which provided residential living arrangements for the mentally ill. It operated more than 20 residential facilities within the City of St. Paul. Familystyle requested special use permits in connection with three other properties which were located within 1320–feet of other similar facilities. The planning commission denied such permits based on the proximity of the other facilities. Familystyle challenged the denial under the Fair Housing Act. The district court held that the Fair Housing Act did not preempt the state or municipality from regulating *institutions* which provide services to the handicapped:

> There is a significant difference between laws which directly regulate individuals and laws which regulate institutions. It is doubtful that in seeking to provide fair housing for the handicapped, the federal government intended to preempt all local regulation of the facilities which house them. Surely the Congress intended states to maintain some control over such facilities.

*Familystyle of St. Paul v. City of St. Paul, Minn.*, 728 F.Supp. 1396, 1401 (D.Minn.1990). The court also pointed out that the challenged regulations did not restrict the housing alternatives for *individuals* with handicaps, but only placed restrictions on residential programs seeking to provide housing for groups of handicapped individuals. *Id.* at 1400.

The Eight Circuit affirmed and concluded that "Congress did not intend to abrogate a state's power to determine how facilities for the mentally ill must meet licensing standards." *Familystyle*, 923 F.2d at 94. On that authority, the Court concludes that the challenged statute is not preempted by the Fair Housing Act.

*Discriminatory Effect*

While the statute and ordinance at issue are not preempted, they may still be invalid if plaintiff is able to prove discriminatory intent or discriminatory effect. *Familystyle*, 728 F.Supp. at 1401. Mr. Bangerter has not alleged that Orem City had a discriminatory motive in adopting the challenged ordinance, but only that the ordinance results in a discriminatory effect.

■ Under the standard set forth in *Familystyle*, plaintiff has made out a prima facie case because the statute and ordinance in question do, on their face, treat the handicapped differently from non-handicapped residents of the city. *Id.* at 1403. The burden now shifts to the defendant to demonstrate that the distinction made by the challenged ordinance between the mentally impaired and others is "rationally related to a legitimate governmental purpose." *Familystyle*, 923 F.2d at 94.

The *Familystyle* court acknowledged the legitimacy and necessity of the government's role in licensing services for the mentally impaired. *Id.* The state statute on which Orem City based its challenged ordinance is targeted specifically at residential facilities which intend to accommodate handicapped individuals who:

> require[ ] a combination or sequence of special interdisciplinary or generic care, treatment, or other services that are individually planned and coordinated *to allow the person to function in and contribute to, a residential neighborhood.*

Utah Code Ann. § 10–9–2.5(1)(a) (1953) (emphasis added).

■ Thus, the statute reflects legislative concerns that the handicapped be integrated into normal surroundings and, as part of

that process, requires "that the residents of the facility will be properly supervised on a 24–hour basis." Utah Code Ann. § 10–9–2.5(2)(b) (1953). The plaintiff and other residents of the group home in question came from more restrictive facilities operated by the state which imposed upon them greater supervision. The fact that the group home offers 24–hour supervision facilitates transfer of individuals with disabilities like Mr. Bangerter's from the more restrictive state-run facilities to the residential facilities contemplated by the state statute. The Court is satisfied that the governmental interest furthered by the statute is legitimate and that the statute is rationally related to this purpose.

*Orem's liability for comments at public meetings*

█ Bangerter, in his second cause of action, alleges that Orem City violated the Fair Housing Act by conducting public meetings at which residents in the community were allowed to voice their objections to the group home thereby "subject[ing] Mr. Bangerter to the verbal threats and attacks of his neighbors." Complaint, ¶ 41. Orem City contends that the facts alleged in the second claim do not state an independent cause of action. At the hearing the Court asked plaintiff's attorney to explain the theory on which the Court could impose liability on Orem City for comments made by private citizens. The only theory of liability offered by Mr. Bangerter's attorney was that because the municipality created a system which solicits citizen input, the municipality should be liable for disparaging comments made by the public at those public meetings.[3] The Court finds Mr. Bangerter's theory untenable and without legal basis. Moreover, to accept that theory and allow a municipality to incur liability for comments by the public at public meetings would necessarily result in the virtual elimination of all public meetings. Because Mr. Bangerter is unable to offer a viable basis for imposing liability on Orem City for the allegedly disparaging com-

ments made at the public meetings, the Court dismisses Mr. Bangerter's second cause of action.

For the foregoing reasons, the Court dismisses plaintiff Bangerter's Complaint with prejudice. It is so ORDERED.

---

**3.** Mr. Bangerter's attorney admitted at the hearing that he was not premising this cause of action on a theory of vicarious liability.